UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| AUSTIN P. ELKINS, </br></br> Plaintiff, </br></br> v. </br></br> COMMISSIONER OF SOCIAL SECURITY, *sued as Martin O'Malley, Commissioner of the Social Security Administration*, </br></br> Defendant. | Case No. 1:23-cv-00141-SLC |

## OPINION AND ORDER

Plaintiff Austin P. Elkins appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF 1).[1] For the following reasons, the Commissioner's decision will be REVERSED, and the case REMANDED to the Commissioner.

### I. FACTUAL AND PROCEDURAL HISTORY

Elkins applied for DIB and SSI in March 2021, alleging disability as of August 1, 2018. (ECF 12 Administrative Record ("AR") 16, 235-42).[2] Elkins's claim was denied initially and upon reconsideration. (AR 88-90, 109, 119). On April 27, 2022, an

---

[1] The parties have consented to the exercise of jurisdiction by a Magistrate Judge. (ECF 10).

[2] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

administrative law judge ("ALJ") held a hearing, taking testimony from Elkins, who was represented by a qualified representative from his counsel's law firm, and a vocational expert. (AR 44-76; *see* AR 89-90). On August 25, 2022, the ALJ rendered an unfavorable decision to Elkins, concluding that he was not disabled because, despite the limitations caused by his impairments, he could perform jobs that exist in significant numbers in the national economy. (AR 13-31). The Appeals Council denied Elkins's request for review (AR 6-12), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

On April 4, 2023, Elkins filed a complaint in this Court appealing the Commissioner's final decision. (ECF 1). Elkins's sole argument on appeal is that the ALJ erred by failing to consider greater crouching restrictions in Elkins's residual functional capacity ("RFC") assessment. (ECF 14 at 4).

As of the ALJ's August 25, 2022, decision, Elkins was twenty-eight years old (AR 235, 237); had a high school education (AR 29, 256); and had past relevant work as a general RV or camper assembler and as an inspector (AR 29, 256). In his application, Elkins alleged disability due to a "shattered leg." (AR 255).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation and quotation marks omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant seeking DIB or SSI must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also id.* §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether he has a severe impairment, (3) whether his impairment is one that the Commissioner considers conclusively disabling, (4) whether he is incapable of performing his past relevant work, and (5) whether he is incapable of performing any work in the national economy. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. §§ 404.1520, 416.920.[3] "[A]n affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled." *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). "A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

## B. The Commissioner's Final Decision

In the ALJ's August 25, 2022, decision, which became the final decision of the Commissioner, the ALJ observed at the outset that Elkins was insured for DIB through December 31, 2023. (AR 18). At step one of the five-step analysis, the ALJ noted that

---

[3] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks he can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. *Id.* §§ 404.1520(e), 416.920(e).

Elkins did not engage in substantial gainful activity since his alleged onset date of August 1, 2018. (*Id.*). At step two, the ALJ found that Elkins had the following severe impairments: obesity, asthma, residual pain from a gunshot wound to the left lower extremity, status post open reduction internal fixation to the tibia and fibula, lumbar spondylosis, chronic pain syndrome, attention deficit hyperactivity disorder, bipolar disorder, major depressive disorder, personality disorder, and generalized anxiety disorder. (AR 18-19). At step three, the ALJ concluded that Elkins did not have an impairment or combination of impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 20).

> The ALJ assigned Elkins the following RFC:
>
> [T]he claimant [has] the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant should never climb ladders, ropes, or scaffolds, kneel, or crawl. He can occasionally climb ramps and stairs, balance, stoop, and crouch. He should avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation. He should avoid concentrated exposure to very loud noises, extreme heat, extreme cold, wetness, and humidity. He should avoid exposure to unprotected heights and dangerous machinery with moving mechanical parts. He can perform work involving simple instructions and routine, repetitive tasks. He cannot perform work requiring a specific production rate, such as assembly-line work. He is able to meet production requirements that allow a flexible and goal-oriented pace and can maintain the focus, persistence, concentration, pace, and attention to engage in such tasks for two-hour increments, for eight-hour workdays, within the confines of normal work breaks and lunch periods. The claimant can make simple, work-related decisions and can respond appropriately to predictable, routine changes in the workplace. He is able to tolerate brief and superficial interaction with supervisors, coworkers, and the general public, which is defined as occasional and casual contact with no prolonged conversations. Contact with supervisors still includes what is necessary for general instruction, task completion, or training. He should not be required to perform tandem tasks. The claimant may need a cane to ambulate.

(AR 22).

The ALJ determined at step four that, given the foregoing RFC, Elkins could not perform his past relevant work. (AR 29). However, at step-five, the ALJ concluded that Elkins could perform a significant number of unskilled, sedentary jobs in the national economy, including document preparer, tube operator, and polisher. (AR 30). Therefore, Elkins's applications for DIB and SSI were denied. (*Id.*).

*C. Physical RFC*

Elkins's only argument on appeal is that the ALJ erred when she failed to include crouching limitations in the RFC. The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (bold emphasis omitted). That is, the "RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.*; *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

> The [RFC] assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). When determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are non-severe. 20 C.F.R.

§§ 404.1545(a)(2), 416.945(a)(2); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).

1. The ALJ's Analysis

In crafting the RFC, the ALJ first considered Elkins's hearing testimony, during which he represented he could not work due to his back and left leg pain, that "his main problem is bending over," and that he uses a cane since he accidentally shot himself in the left knee on September 4, 2018. (AR 23; *see* AR 24). The ALJ also relayed Elkins's ability to perform certain activities of daily living. (AR 23). She then discounted Elkins's allegations, concluding that his statements were "not entirely consistent with the evidence" because he had "not generally received the type of medical treatment one would expect for a totally disabled individual," and because his testimony was undermined by his activities of daily living. (AR 23-24).

As to the activities of daily living, the ALJ considered that Elkins could take care of himself and his children, handle household tasks, shop in stores for food and clothes, manage a checking and savings account, watch TV, and work on cars (AR 24). She stated that in performing those activities, Elkins was "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (*Id.*).

Turning to the medical evidence, the ALJ remarked that surgical procedures, including a left knee arthrodesis performed in September 2018, and prescriptions for medications suggested his symptoms were genuine, but the success of his surgery and effectiveness of the medication indicated relief of his symptoms. (AR 24; *see* AR 354). She opined that while physical examinations showed that Elkins was "unable to flex his

left knee," "had reduced range of motion due to pain in the spine," and had "positive and negative straight leg raise tests," he experienced 50-90% improvement in pain and 40-50% improvement in function with medication, thereby "demonstrating greater functioning than [Elkins] allege[d]." (AR 24).

She explained that after his surgery, Elkins began using an assistive device, underwent physical therapy, and received home care. (*Id.*). However, the ALJ pointed to Elkins's improvement, notably that his fracture was healing well with no significant abnormalities, that by December 2018 he was released to go back to work, and that a CT scan revealed his knee joints were well-fused with no significant abnormalities. (AR 25).

The ALJ highlighted that from December 2018 to January 2021, Elkins had not received treatment for his leg pain, but that beginning January 2021 he reported sharp pain in his left knee, which was worsening, and that the pain was impairing his ability to walk. (*Id.*). She also considered Elkins's February 7, 2022, diagnosis with chronic pain syndrome but that he had begun pain management treatments in March 2021 and that he subsequently reported 50-90% improvement in pain after being prescribed gabapentin, oxycodone, and Tramadol and 50-70% relief in pain after receiving medial branch block injections. (*Id.*).

The ALJ parsed through the record which she represented revealed "mildly abnormal results," noting that Elkins was unable to flex his left knee and had no joint effusion, that he showed restricted range of motion due to pain and negative straight leg raise, but that he was able to ambulate without an assistive device and that his gait was normal. (*Id.*).

The ALJ then evaluated the opinions of consultative examiners R. Gupta, M.D., and Vijay Kamineni, M.D., who performed their evaluation of Elkins on April 25, 2019, and August 20, 2021, respectively. (AR 26). She noted that during both evaluations, Elkins had decreased range of motion with his left knee, with Dr. Kamineni reporting that the reduced range of motion was caused by the fusion surgery. (*Id.*). The ALJ noted that Elkins had an antalgic gait without an assistive device, pain and tenderness to the left knee, and was unable to stoop, squat, and walk heel to toe tandemly during his visit with Dr. Gupta, but that he was able to sustain gait without an assistive device, though walking was more painful without it during his visit with Dr. Kamineni. (*Id.*).

The ALJ concluded that Dr. Kamineni's opinion was "unpersuasive as it is inconsistent with the evidence of record showing that the claimant is able to ambulate without a device, and his gait was normal," and because it was "inconsistent with evidence that the claimant had some restricted range of motion in the lumbar spine due to pain and tenderness to palpation of the spinous process, but he had negative straight leg raise." (AR 28). The ALJ further found that "Dr. Kamineni's opinion appears to be based primarily on the claimant's statements of what he can do and not on an examination identifying the most he could do," rather than his own examination "which found normal range of motion throughout, except in the left knee[,] . . . normal muscle strength in the upper and lower extremities, normal heel/toe walking and tandem walk, and negative straight leg raise." (*Id.* (citations omitted)).

The ALJ also analyzed the opinions of the state agency physicians, J. Sands, M.D., who reviewed Elkins's medical record in May 2019, and J.V. Corcoran, M.D., who

9

reviewed his medical record in August 2021. (*Id.*). The ALJ contrasted Dr. Sands's finding that Elkins was able to occasionally balance, stoop, kneel, crouch, and crawl with Dr. Corcoran's finding that Elkins could occasionally balance, stoop, and crouch, but could never kneel and crawl. (*Id.*). The ALJ found those opinions generally persuasive, stating that "they are mostly consistent with the evidence of record documenting the claimant's prior surgery on his left leg following his accident," and that they "support a limitation to sedentary work with occasional postural activities, but no crawling or kneeling." (*Id.*). The ALJ also found the state agency physician opinions "consistent with evidence that the claimant had normal muscle strength, normal heel and toe walking, normal tandem walk, and negative straight leg raises" and record evidence of "some restricted range of motion of the spine and left knee." (*Id.*).

Lastly, the ALJ discussed the examination of state agency physician M. Brill, M.D., performed on October 14, 2021, specifically noting Dr. Brill's conclusion that Elkins could "occasionally engage in all postural activities" was "not limiting enough given the claimant's left knee arthrodesis and use of a cane at times," and thus, that Dr. Brill's opinion was unpersuasive. (AR 29). Ultimately, the ALJ limited Elkins to occasionally crouch, but never kneel or crawl. (AR 22).

2. The Medical Record

Elkins first argues that the medical record supports greater limitations in his ability to crouch than assigned by the ALJ. He explains that after his September 7, 2018, and September 11, 2018, arthrodesis surgeries, he was restricted to no weight bearing on his left leg and 50% weight bearing on his left leg, respectively. (ECF 14 at 11 (citing AR

391, 884)). On September 27, 2018, it was noted that he would "attain optimal activity level by [November 20, 2018]," but Elkins argues it is unclear when the weight-bearing restriction was lifted. (*Id.*; *see* AR 968). He also points to his examination with Dr. Gupta on April 25, 2019, during which he exhibited a decreased range of motion in the left knee with a 30/150-degree flexion (which he characterizes as an 80% reduction from normal function) and was "unable to squat." (ECF 14 at 11 (citing AR 1203-04); *see* AR 1203 ("He is unable to stoop and squat.")). Elkins avers such findings were consistent with the August 20, 2021, opinion issued by Dr. Kamineni (which the ALJ found to be unpersuasive), at which point Elkins displayed limited range of motion in his left leg and 0-degree of flexion in his left knee. (*Id.* at 11-12 (citing AR 1455, 1461)).[4] He also lists a series of pain management medical notes starting March 2021 until March 2022 reflecting that he could not "flex" his left knee despite "good healing" following the arthrodesis surgeries. (ECF 14 at 11 (citing AR 1256, 1263, 1269, 1276, 1496, 1503, 1509, 1517, 1527, 1594, 1601, 1616, 1624, 1632)).

Given the foregoing evidence, the Court agrees that the ALJ's opinion does not sufficiently support her RFC conclusion. The ALJ generally considered Elkins's inability to flex his left knee and Dr. Kamineni's and Dr. Gupta's opinions (AR 25), but nevertheless concluded that Elkins was able to crouch occasionally.[5] "There is no

---

[4] Dr. Kamineni also found that Elkins "walk[ed] [with] a limp as his [left] knee is fixed [and] fused." (AR 1456).

[5] The ALJ concluded Dr. Kamineni's opinion was inconsistent with the medical record, but the portion of his opinion which noted Elkins had 0-degree flexion in his left knee is well supported in the record. Additionally, while the ALJ evaluated Dr. Gupta's consultative examination, she never discussed the persuasiveness of his medical opinion. *Hebein v. Kijakazi*, No. 3:21-CV-880-TLS-MGG, 2023 WL 2583267, at *5 (N.D. Ind. Mar. 21, 2023) ("In reviewing a disability claim, an ALJ has an obligation to

requirement of . . . tidy packaging, however; [the Court] read[s] the ALJ's decision as a whole and with common sense." *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010) (citations omitted)). But here, while "[t]he ALJ was entitled to make reasonable inferences from the evidence before [her]," *Stevenson v. Chater*, 105 F.3d 1151, 1155 (7th Cir. 1997), inferring that Elkins could crouch despite acknowledging his documented inability to flex his knee and objective medical evidence showing 0-to-30-degree flexion in his left knee was not reasonable. "The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion." *Thelmarae W. v. Saul*, 476 F. Supp. 3d 717, 724 (7th Cir. 2020) (citations omitted). In acknowledging this evidence, yet concluding otherwise, the ALJ failed to build a logical bridge from the medical record to her decision. *See Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (stating that an ALJ is required to "build an accurate and logical bridge between the evidence and the result").

This oversight was not harmless error as the medical evidence, in turn, puts into question whether Elkins could crouch. Crouching is defined as "[b]ending the body downward and forward by *bending* the legs and spine." *Matthew M. v. Kijakazi*, No. 1:22cv479, 2023 WL 5526631, at *3 (N.D. Ind. Aug. 28, 2023) (emphasis added) (citing Program Operations Manual System (POMS) § 25001.001). Although the ALJ acknowledged Elkins was unable to "flex" his knee, which is an inherent requirement for crouching, there is no explanation why the ALJ found he could occasionally crouch.

---

evaluate every medical opinion and explain the persuasiveness of the opinion." (citing 20 C.F.R. §§ 416.920c(a), (b))).

  Elkins also argues that the ALJ committed error when she equated his improvement with respect to his pain to an improvement in his functional ability. The Court agrees. The ALJ cited Kara Firas, M.D.'s pain management notes for the proposition that Elkins improved in his functional abilities, but a review of the cited evidence does not command such a conclusion. (AR 25 (citing AR 1256, 1607-08, 1615-16, 1622-23, 1630-31)). Taking a closer look, it appears the pain management notes cited by the ALJ are related to his knee pain, rather than his ability to flex his knee. Most glaringly, the same reports cited by the ALJ state that Elkins is unable to flex his left knee. (*Compare* AR 1607-08, *with* AR 1609; *compare* AR 1615, with AR 1616; *compare* AR 1622-23, *with* AR 1624; *compare* AR 1630-31, *with* AR 1632). It, therefore, seems the ALJ missed the forest by placing too much focus on the trees.

  Even assuming Elkins had improved 40-50% from a 0% ability to flex his knee, it is still unclear that such progress would be sufficient for Elkins to work full-time. "The key is not whether one has improved (although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled." *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014), *as amended* (Aug. 20, 2014); *Matthew M*, 2023 WL 5526631, at *3 ("Rather than discussing any of these facts showing limitations in . . . crouching, the ALJ instead focused on signs of improvement and progress during a time Plaintiff was recovering from surgery and clearly unable to actually engage in . . . crouching."). Given the countervailing medical record, the ALJ failed to support her opinion with substantial evidence, thereby justifying a remand of this case. *See Schmidt*, 395 F.3d at 744.

3. <u>Elkins's Activities of Daily Living</u>

Elkins also takes issues with the ALJ's conclusion that his activities of daily living support a conclusion that he is able to occasionally crouch. This argument, too, is persuasive. At the hearing, Elkins testified that he can "get up and pick up what's ever left up in [his children's] room, and [wash] dishes, and laundry, and minimal things around the yard." (AR 56). He further testified that when mowing the grass, he has to stop and take a break. (*Id.*). He stated he is able to sweep, has no problems taking a shower or getting dressed, and reads to his children at night. (*Id.*). He also explained that he "dabbled[s] in tinkering [with] lawnmowers, and cars," but it was hard for him to stayed hunched over for very long. (AR 57). In her opinion, the ALJ relayed that Elkins's daily activities included, among others, picking up after his kids, preparing meals for them and himself, doing laundry, washing dishes, helping his kids with their homework and taking them to their games, mowing the grass with breaks, sweeping and vacuuming, and working on cars. (AR 23). As stated above, the ALJ found that Elkins was "not limited to the extent one would expect" in his ability to perform his daily activities. (AR 24).

An ALJ is to consider a claimant's activities of daily living when she evaluates his subjective allegations, 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p, 2017 WL 5180304, at *7 (Oct. 25, 2017), but in doing so she must explain any inconsistencies between the claimant's activities, his complaints, and the medical evidence, *Zurawski*, 245 F.3d at 887; *Clifford*, 227 F.3d at 870 ("The ALJ did not provide any explanation for his belief that Clifford's activities were inconsistent with Dr. Combs's opinion and his

14

failure to do so constitutes error."). "[A]lthough it is appropriate for an ALJ to consider a claimant's daily activities when evaluating their credibility, this must be done with care." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) (citing SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996)). "We have repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Id.*

Here, Elkins's activities of daily living do not support the conclusion that he can occasionally crouch. To begin, they are not incompatible with an inability to crouch. Rather, the daily activities cited by the ALJ—mostly housework, cooking, and personal care—"are fairly restricted . . . and not of a sort that necessarily undermines or contradicts" a claim of inability to crouch. *Zurawski*, 245 F.3d at 887; *see Clifford*, 227 F.3d at 872 ("[M]inimal daily activities . . . do not establish that a person is capable of engaging in substantial physical activity."); *Zurawski*, 245 F.3d at 887 (stating activities such as washing dishes, helping children prepare for school, doing laundry, and preparing dinner are not incompatible with allegations of pain). Most importantly, the ALJ does not explain how the cited daily activities would undermine greater limitations for crouching but not for kneeling, as both postural activities involve the same maneuver, that is bending the knee. Social Security Administration, *POMS* § 25001.001, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001 (last visited July 26, 2024) (defining kneeling as "[b]ending the legs at the knees to come to rest on the knee or knees," and crouching as "[b]ending the body downward and forward by bending the legs

15

and spine").[6] As such, the ALJ's reference to Elkins's daily activities does not lend support to her conclusion that Elkins can occasionally crouch while never kneeling.

Given that the ALJ's other arguments do not support her RFC assessment, and in the face of medical evidence suggesting greater limitations in Elkins's ability to crouch, the ALJ's analysis of his daily activities also falls short of being supported by substantial evidence. *See Schmidt*, 395 F.3d at 744.[7]

Consequently, the Court finds that the ALJ erred when concluding that Elkins could occasionally crouch, and thus the case will be remanded on that basis.[8] On remand, the ALJ will be tasked with examining the record evidence pertaining to Elkins's ability to crouch, and its impact, if any, on the RFC assessment.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and the case is REMANDED to the Commissioner in accordance with this Opinion and Order.

---

[6] *Low Postures*, U.S. Bureau of Labor Statistics, https://www.bls.gov/ors/factsheet/low-postures.htm#:~:text=Kneeling%20%E2%80%93%20bending%20the%20legs%20at,on%20or%20near%20the%20ground.

[7] Beyond considering activities of daily living and an improvement in Elkins's pain, the inherent logical deficit in the ALJ's opinion cannot be cured by her findings regarding Elkins's "normal neurological findings, including largely normal muscle strength in Elkins's legs, mostly normal straight-leg raising tests, and normal sensation," nor the fact that Elkins had an "intact surgically-fused left knee" and "mild findings in Plaintiff's lower back," as the Commissioner suggests. (*See* ECF 19 at 5). This evidence conflicts with the ALJ's finding and the plethora of medical evidence showing Elkins is unable to flex his knee. *See Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021) ("[A]n internally inconsistent opinion by an ALJ is likely to fail to build a logical bridge between the evidence and the result.").

[8] As a final note, the Commissioner argues that even if the ALJ erred in considering Ekins's ability to crouch, such error would be harmless because the occupations cited by the vocational expert do not require crouching. (EFC 19 at 9). The Court refuses to conjecture at this juncture. "[T]he fact that the administrative law judge, had she considered the entire record, might have reached the same result does not prove that her failure to consider the evidence was harmless." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010); *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004)

The Clerk is DIRECTED to enter a judgment in favor of Elkins and against the Commissioner.

SO ORDERED.

Entered this 5th day of August 2024.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge
